1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   FRANCISCO URIARTE,                        CASE NO. 06cv1558-W (WMc)

12                              Plaintiff,     REPORT AND
                                               RECOMMENDATION REGARDING
           vs.                                 (1) DEFENDANTS' MOTION TO
13                                             DISMISS THE COMPLAINT; (2)
                                               PLAINTIFF'S MOTION FOR
14   ARNOLD SCHWARZENEGGER, et al.,            DEFAULT

15                              Defendant.

16

17          This Report and Recommendation is submitted to United States District Judge Thomas

18   Whelan pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.3 of the United States District

19   Court for the Southern District of California.

20          **I. PROCEDURAL BACKGROUND**

21          Plaintiff Francisco Uriarte ("Plaintiff") a state prisoner currently incarcerated at Ironwood

22   State Prison in Blythe, California, is proceeding *pro se* and *in forma pauperis* ("IFP") in this

23   action filed pursuant to 42 U.S.C. § 1983.  In his Complaint, Plaintiff seeks injunctive relief and

24   compensatory and punitive damages against Defendants.  Plaintiff asserts six causes of action: (1)

25   Defendants denied Plaintiff due process in violation of the  Fourteenth Amendment,(2) Defendants

26   acted with deliberate indifference to Plaintiff's health and safety in violation of the Eighth

27   Amendment, (3) Defendants acted with deliberate indifference "to his health and safety as a result

28   of deficient policies and procedures in violation of the Eighth Amendment; (4) Defendants acted

1   with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment; (5)

2   Plaintiff's conditions of confinement violated his Fourteenth Amendment rights; and (6)

3   Defendants conspired to violate his civil rights pursuant to § 1985(3).  Plaintiff also asserts several

4   state law claims.

5          On July 11, 2007, Defendants filed a Notice of Motion and Motion to Dismiss.  Plaintiff

6   filed an opposition September 4, 2007, and on October 1, 2007, Defendants filed a Reply to

7   Plaintiff's Opposition.

8          **II.  FACTUAL BACKGROUND**

9          The following is taken from the parties' pleadings and is not to be construed as findings of

10  fact by the Court.

11         According to Plaintiff, on February 7, 2004, Defendant Martinez was working the

12  tower/control panel in Building 13.  Plaintiff states that the door to his cell (number 146) was

13  opened less than halfway.  Plaintiff began to cross the threshold of the cell sideway because the

14  opening was not large enough to accommodate his full width.  While Plaintiff was still crossing

15  the threshold of his cell, Defendant Martinez closed the cell door and crushed Plaintiff between the

16  cell door and door jamb. (Complaint at 5.)  Plaintiff's cell mate yelled to Defendant Martinez to

17  open the door.  According to Plaintiff, Defendant Martinez did not open the door until he had

18  finished releasing the other inmates from their cells.  (Id.)  Defendant Martinez then "slightly

19  released the door pressure ... and suddenly re-slammed the door against Plaintiff's body for a

20  second time." (Id.)

21         Plaintiff believed he had been seriously injured as a result of the cell door twice closing on

22  him.  Plaintiff requested medical treatment but Defendant Martinez refused to send him for

23  medical attention.  Plaintiff requested assistance from Defendant Hurm but he also refused

24  Plaintiff medical attention.  From the date of the incident to February 13, 2004, Plaintiff  requested

25  medical attention from Defendant Williams, Defendant Jones, Defendant Ramirez, Defendant

26  Spence, Defendant Reed, and Defendant Comaucho.  (Id. at 7.)  Each individual refused to

27  authorize medical attention for Plaintiff.  On or about February 13, 2004, Dr. Jenkin examined

28  Plaintiff. (Id. at 9.) However, Plaintiff did not receive a referral for an x-ray until May 5, 2004.

(Id. at 10.)  Dr. Jenkin wrote a pass for an x-ray of Plaintiff's left side.  (Id. at 9).  Plaintiff was x-rayed on February 17, 2004.  The x-ray report showed a healing fracture on Plaintiff's left ninth anterior rib.  (Id. at 9; Exhibit B). Plaintiff alleges he was not informed of the results of the x-ray nor given proper medical attention. (Id. at 9). On May 5, 2004, Dr. Jenkin ordered additional x-rays of Plaintiff's right ribs, left shoulder, and cervical spine.  (Id. at 10).  The results stated: (1) the "old fracture of the fifth right lateral rib and the left anterior lateral ninth rib are present and unchanged"; (2) there was mild AC osteoarthritis in his left shoulder; and (3) there was a loss of normal cervical lordosis and mild degenerative disc disease in his cervical spine. (Id. at 10; Exhibit D).  Plaintiff was also seen by Dr. Choo on June 14, 2004, and another x-ray of Plaintiff's left clavicle was taken.  No changes were noted from Dr. Jenkin's first x-ray.  Both Dr. Jenkins and Dr. Choo diagnosed injury to Plaintiff's ribs. (Id. at 10.)

## III.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  In deciding such a motion, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at 338.  Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988)).

In addition, where a plaintiff appears *in propria persona* in a civil rights case, the court must also be careful to construe the pleadings liberally and afford plaintiff any benefit of the doubt.  *See Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc). The rule of liberal construction "is particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who

1   benefits from the representation of counsel.").  In giving liberal interpretation to a *pro se* civil

2   rights complaint, however, a court may not "supply essential elements of the claim that were not

3   initially pled."  *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir.

4   1982).  "Vague and conclusory allegations of official participation in civil rights violations are not

5   sufficient to withstand a motion to dismiss." *Id*.; see also *Sherman v. Yakahi*, 549 F.2d 1287, 1290

6   (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to

7   state a claim under the Civil Rights Act.").  Thus, at a minimum, even the *pro se* plaintiff "must

8   allege with at least some degree of particularity overt acts which defendants engaged in that

9   support [his] claim."  *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.

10  1984).

11      As a general rule, when resolving a motion to dismiss for failure to state a claim, the court

12  may not consider materials outside the pleadings.  *Schneider v. California Dep't of Corrections*,

13  151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  "The focus of any Rule 12(b)(6) dismissal. . .is the

14  complaint." *Id*. at 1197 n.1.  However, the court may consider facts established by exhibits

15  attached to the complaint. *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987). The

16  court may also disregard allegations in the complaint if they are contradicted by facts established

17  by exhibits attached to the complaint. *Id*.  The Court is not required to accept as true conclusory

18  allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council*

19  *v. Watt*, 643 F.2d 618, 624 (9th Cir.) cert denied, 454 U.S. 1031, 102 S.Ct. 567 (1981).  In addition,

20  the Court need not accept legal conclusions "cast in the form of factual allegations." *Id*.

21      A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity

22  to amend, unless the complaint's deficiencies can not be cured by amendment. See *Noll v.*

23  *Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

24      **IV.  DEFENDANTS' FED.R.CIV.P. 12(B)(6) MOTION**

25      **A.  Immunity**

26      Defendants A. Schwarzenegger, J. Tilton, R. Hickman, J. Woodford, P. Farber-Szekreny,

27  and N. Grannis  move to dismiss all claims against them in their official capacity because "a suit for

28  damages against a state official in his or her official capacity is barred by the Eleventh

1   Amendment." (MTD at 5).

2       Plaintiff opposes the dismissal and seeks to add Defendant Grannis in his individual

3   capacity and to join Defendant Grannis as a co-conspirator. (Pl. Opp at 1).

4       "The eleventh amendment bars both a federal court action for damages (or other retroactive

5   relief) brought by a citizen against a state and such a federal court action brought by a citizen

6   against a state official acting in his official capacity." *Pena v. Gardner*, 976 F.2d 469, 472 (9ᵗʰ Cir.

7   1992). "The Amendment only prohibits damage actions against the 'official's office' — actions

8   that are in reality suits against the state itself, rather than individual officials." *Barry v. Ratelle*, 985

9   F. Supp. 1235, 1240 (S.D.Cal 1997).

10      Because Plaintiff has specifically stated in his complaint that Defendants A.

11  Schwarzenegger, J. Tilton, R. Hickman, J. Woodford, P. Farber-Szekreny, and N. Grannis, are

12  being sued in their official capacity, immunity under the Eleventh Amendment applies.

13  Accordingly, it is recommended that Defendants' Motion to Dismiss on this ground be

14  **GRANTED**.[1]

15      **B.  Preliminary Injunction**

16      According to the Defendants "[i]n his prayer for relief, Plaintiff seeks injunctive relief

17  through an order requiring CDCR officials to provide Plaintiff an independent chiropractor to

18  examine his spine and an MRI from the waist up to fully diagnose his injuries." (MTD at 7).

19      Plaintiff responds by arguing that "the receiver should be joined to the complaint as Jon Doe

20  I." (Pl. Opp at 1).

21      In order to obtain a preliminary injunction the movant must demonstrate "(1) a strong

22  likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if

23  preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

24  advancement of the public interest (in certain cases)." *Johnson v. Cal. State Bd. of Accountancy*, 72

25  F.3d 1427, 1430 (9ᵗʰ Cir. 1995) (internal quotation marks and citation omitted). Alternatively,

26  injunctive relief could be granted if he "demonstrate[d] 'either a combination of probable success

27

28      [1] Plaintiff's request to add Defendant Grannis to his lawsuit in her personal capacity is denied without prejudice. Plaintiff must do so by means of an amended complaint.

1   on the merits and the possibility of irreparable injury or that serious questions are raised and the

2   balance of hardships tips sharply in his favor.'" *Id.* (citation omitted).  "These two alternatives

3   represent 'extremes of a single continuum,' rather than two separate tests." *Clear Channel Outdoor*

4   *Inc. v. City of Los Angeles* , 340 F.3d 810, 813 (9th Cir. 2003) (citation omitted). Thus, the greater

5   the relative hardship to the party seeking the preliminary injunction, the less probability of success

6   must be established by the party. *Id.*

7          Applying the standard in *Johnson* to this case, Plaintiff's claim fails.  Plaintiff has not

8   sufficiently demonstrated that he has a strong likelihood of success on the merits of his claim.

9   Further, Plaintiff has failed to show that he will suffer irreparable injury if he does not receive the

10  additional medical attention he seeks.  Lastly, evidence presented by Plaintiff shows he has had

11  more than one round of x-rays, more than one MRI,  and has received pain medication and seen a

12  physical therapist.  (Pl. Ex. B, C, D, E, F, G, H).  Differences in judgment between an inmate and

13  prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to

14  establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

15         Based on the foregoing, it is recommended that Defendants' Motion to Dismiss Plaintiff'

16  claim for injunctive relief be **GRANTED**.

17         **C.  Failure to Exhaust Administrative Remedies**

18         Defendants claim Plaintiff failed to exhaust available administrative remedies pursuant to

19  42 U.S.C. § 1997 e(a) before bringing this suit. Therefore, they seek dismissal under the non-

20  enumerated provisions of Fed.R.Cvi.P. 12(b).  The Ninth Circuit has held that "failure to exhaust

21  nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly

22  raised pursuant to a motion to dismiss, including a non-enumerated motion under Fed.R.Civ.P.

23  12(b).  *Ritza v.  Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir.

24  1988); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.  2003) (finding a non-enumerated motion

25  under Rule 12(b) to be the "proper pretrial motion for establishing nonexhaustion" of

26

27

28

1   administrative remedies under 42 U.S.C. § 1997e(a).[2]   *Wyatt* also holds that non-exhaustion of

2   administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which

3   defendant prison officials have the burden of raising and proving.  *Wyatt*, 315 F.3d at 1119.

4   However, unlike Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial

5   remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120

6   (citing *Ritza*, 837 F.2d at 369).

7          The Prison Litigation and Reform Act ("PLRA") amended 42 U.S.C. 1997e to provide that

8   "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

9   federal law, by a prisoner confined in any jail, prison or other correctional facility until such

10  administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a).  Exhaustion is

11  mandatory and not left to the discretion of the district court.  *Woodford v Ngo*, 584 U.S. 81, 126

12  S.Ct. 2378, 2382 (2006).   Exhaustion is required prior to the filing of any prisoner lawsuit

13  concerning prison life, whether the claims involve general conditions or specific incidents and

14  whether they allege excessive force or some other wrong.  "Even when the prisoner seeks relief not

15  available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."

16  *Porter v.  Nussle*, 534 U.S. 516, 524, 532 (2002).

17         The State of California provides its prisoners and parolees the right to administratively

18  appeal "any departmental decision, action, condition or policy perceived by those individuals as

19  adversely affecting their welfare."  Cal Code Regs., tit. 15 § 3084.1(a).  In order to exhaust

20  available administrative remedies within this system, a prisoner must proceed through several

21  levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3)

22  second level appeal to the institution head or designee, and (4) third level appeal to the Director of

23  the California Department of Corrections.  *Barry v.  Ratelle*, 985 F.Supp.1235, 1237 (S.D.  Cal.

24  1997) (citing Cal.Code Regs., tit.15 § 3084.5).  The third or "Director's Level" of review shall be

25  final and exhausts all administrative remedies available in the Department [of Corrections.]" Cal.

26

27         [2] In so finding, the Ninth Circuit made clear that unlike a motion for summary judgment, "dismissal

28  of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Wyatt*, 315 F.3d at 1119 (citation omitted).  Thus, if the court finds that the prisoner has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice."  *Id.*  (citing *Ritza*, 837 F.2d at 368 & n.3).

1  Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review;" *Barry*, 985 F. Supp. at

2  1237-38; *Irvin v. Zamora*, 161 F.Supp. 2d 1125, 1129 (S.D. Cal. 2001).

3        Here, Defendants argue that Plaintiff's complaint should be dismissed because Plaintiff did

4  not exhaust his administrative remedies. Specifically, Defendants cites to Plaintiff's grievance

5  initially filed April 20, 2004, which he included as an attachment to the Complaint.

6        Plaintiff contends he did not receive the response to his second level appeal on December

7  29, 2004, as alleged by Defendants but, rather, received it on January 28, 2005.  Plaintiff further

8  argues that on February 15, 2005, he timely submitted his 602 appeal for "Director's Level" review.

9  (Compl. Ex. K at 26.)

10        **1. Grievance Number One: RJD-04-979:**

11        Following is a timeline for Plaintiff's grievance through three required levels of

12  administrative appeal up to the "Director's Level."

13  **April 20, 2004**: Plaintiff filed his first form 602 grievance regarding the February 7, 2004 incident.

14  In the grievance Plaintiff s recounted his experience of being trapped in the cell doorway and

15  Defendant Martinez's action of re-opening and closing the cell door on Plaintiff.  Plaintiff also

16  stated in the grievance that Defendant Martinez would not refer Plaintiff for medical evaluation and

17  treatment. (MTD at 10.) No other defendants actions are complained of in this particular grievance.

18  **May 7, 2004**: Facility Captain Bracamonte issued a memorandum reviewing and concurring with

19  Defendant Stricklin's "determination that there was no staff misconduct, and that no further action

20  is required in this matter." (Compl. Ex. R. at 58.)

21  **June 29, 2004:** Defendant Strickland responded to Plaintiff's grievance at the informal level, and

22  concluded that the allegations against Defendant Martinez could not be substantiated.

23  **July 12, 2004**:  Plaintiff appealed his grievance for second level review.  (Compl. Ex K. at 25.)

24  **December 22, 2004:** Defendant Oliveros (Chief Deputy Warden) issued a ruling on Plaintiff's

25  grievance at the second level of appeal.  Specifically Defendant Oliveros stated " [A]n inquiry into

26  your complaint has been completed. There is insufficient evidence to support your claim that

27  Officer Martinez caused your injuries.  Therefore, based on the above, your CDC-602 Appeal is

28  PARTIALLY GRANTED at this Second Level of Review as an inquiry was completed and you

1  have received medical care.  If you are dissatisfied with this appeal review, you may request a Third

2  Level of Review by following the directions on the back of your CDC-602 Inmate Appeal/Parolee

3  form." (Compl. Ex.S at 59-60.)

4  **December 29, 2004:** Defendant Oliveros forwards his response at the second level of review to

5  Plaintiff.

6  **February 15, 2005:** Plaintiff submits his request for Director's Level Review. (Compl. Ex. K at

7  26.)

8  **February 22, 2005:** Defendant Grannis receives Plaintiff's request for a Director's Level Review.

9  **May 22, 2005**: Defendant Grannis returns Plaintiff's third level appeal on the ground that it was not

10 filed within fifteen working days of Plaintiff's receipt of his lower level decision. Plaintiff is

11 specifically informed "Your assigned counselor, the Appeals Coordinator, or your Parole Agent can

12 answer any questions you may have regarding the appeals process.  Library staff can help you

13 obtain any addresses you need." (Compl. Ex. T. at 63.)

14        To support their nonexhaustion claim defendants have submitted a declaration by T. Emigh,

15 Assistant Chief, Inmate Appeals Branch(IAB), at the California Department of Corrections and

16 Rehabilitation.  The IAB keeps an electronic record of each inmate appeal that has proceeded

17 through the Director's level of review since 1993. (Decl. T. Emigh at 2.) The "computer database

18 tracks all properly filed inmate appeals received since 1993, which are then accepted by the Inmate

19 Appeals Branch and adjudicated at the Director's level."  (Decl. T. Emigh at 2.)  "The Inmate

20 Appeals Branch reviews an appeal for timeliness based upon the date listed in section G of the 602

21 form, which indicates the date the appeal and second level response was returned to the inmate.  If

22 the Inmate Appeals Branch did not receive the appeal within fifteen working days of that date, it is

23 screened out as untimely. Cal. Regs. tit. 15 § 3084.6(c)."  (Decl. T.Emigh at 3).

24        Further, Defendants point to T. Emigh's declaration which provides: "On February 22,

25 2005, Plaintiff  submitted institutional Appeal Log No. RJD 04-979, pertaining to a staff complaint.

26 On May 22, 2005, this appeal was returned to Plaintiff because it had not been submitted within

27 fifteen (15) working days of the event or decision being appealed, or of receiving a lower level

28 decision in accordance with CCR section 3084.6(c)."  (Decl. T. Emigh at 3).

1    However, rather than accept Defendants' self-serving interpretation of CCR § 3084.6(c)

2    the Court is using the "Date Submitted" entry on the Form 602 section H to determine Plaintiff's

3    compliance/non-compliance with the fifteen day rule. Section 3084.6(c) does *not* state the appeal

4    must be *received* in Sacramento within fifteen days after the form 602 is returned to the prisoner

5    following the notice of decision at the Second Level of Review. The Court notes the specific

6    language of § 3084.6(c) :

7        **(c) Inmate or Parolee response.  An appellant must submit the appeal within 15**

8            **working days of the event or decision being appealed, or of receiving an unacceptable lower lev**

9    Since the regulation is not clear on the issue of when the moment of filing has occurred, the Court

10   can look at how similar regulations have been interpreted. *See Houston v. Lack*, 487 U.S. 266, 108

11   S.Ct. 2379, 2382 (1988); *Cf.* 8 C.F.R. § 1003.38 (c) ("The date of filing of the Notice of Appeal

12   (Form EOIR-26) shall be the date the Notice is **received** by the Board.") (emphasis added).

13   The Supreme Court in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 2382 (1988),    held

14   "a prisoner acting *pro se* will be found to have his/her notice of appeal "filed"  the moment the

15   notice is handed over to prison authorities for mailing to the court. *Id*. at 2380.  " The situation of

16   prisoners seeking to appeal without the aid of counsel is unique.... Unlike other litigants, pro se

17   prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to

18   establish the date on which the court received notice.  Other litigants may choose to entrust their

19   appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only

20   the pro se prisoner is forced to do so by his situation. ... Worse, the pro se prisoner has no choice

21   but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or

22   supervise and who may have every incentive to delay. .... And if there is a delay the prisoner

23   suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for

24   his confinement prevents him from monitoring the process sufficiently to distinguish delay on the

25   part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on

26   the date received." *Id*. at 2382.

27   Applying the analysis in *Houston v. Lack* to Plaintiff's grievance  RJD 04-979, the Court

28   finds Plaintiff's request for Director's level review was "submitted"  based on the date in section H

1   of Form 602.  Thus, calculating 15 working days from December 29, 2004,  Plaintiff should have

2   submitted his appeal request on or before January 20, 2005, to be timely submitted.  A review of the

3   date provided by Plaintiff in his Form 602, section H shows that he did not submit his request until

4   February 15, 2005, well after the 15 days expired.  Proper exhaustion is necessary and the

5   exhaustion requirement cannot be met "by filing an untimely or otherwise defective administrative

6   grievance or appeal." *Woodford v. Ngo*, 548 U.S.81, 126 S.Ct. 2378, 2382 (2006).  Therefore,

7   Plaintiff's claims arising from grievance RJD 04-979 are unexhausted.

8           **2. Grievance Number Two:  RJD 04-1615**

9           Also, contained in Plaintiff's Complaint are claims that arise from a second grievance.

10  (Compl. Ex L at 36.)  After thoroughly reviewing Defendants' Motion to Dismiss, it is unclear if

11  Defendants assert a claim for dismissal on nonexhaustion grounds with respect to these

12  claims.(MTD at 8-13.)  Indeed, throughout their argument regarding Plaintiff's failure to exhaust,

13  Defendants' consistently refer to Plaintiff's appeal (singular) and never appeals.  However,

14  Defendants briefly refer to both grievances in their reply: "Plaintiff failed to exhaust his

15  administrative remedies, however, because both grievances were screened out in accordance with

16  the governing regulations because they were submitted late." (Defs. Reply at 4.) Thus, the Court

17  will now address the exhaustion issue regarding Plaintiff's *second* grievance,  RJD:04-1615.

18          Plaintiff filed a second Form 602 grievance (04-1615) relating to the alleged deliberate

19  indifference of specific Defendants to his medical needs and his inability to obtain medical

20  treatment.  (Compl. Ex L at 36.)  In his Opposition, Plaintiff specifically argues appeal RJD:04-

21  1615 was submitted for Director's Level review within the fifteen day deadline.  (P.Opp. at 2.)

22          Following is a timeline for Plaintiff's **grievance RJD:04-1615** through the required levels

23  of administrative appeal up to the "Director's Level:"

24  **October 20, 2004:** Plaintiff  filed his second form 602 grievance related to the February 7, 2004,

25  incident.  The gravamen of this second grievance was Plaintiff's claim that he was continually

26  denied medical treatment for this injuries that he suffered as a result of the events described in his

27  April 20, 2004 form 602 grievance.

28  **October 27, 2004:** Plaintiff's first level of review results in the grievance being denied by

correctional staff[3].  Specifically the staff response states "you were seen by Dr. Smith on 10-20-04. He has ordered an MRI .  As soon as scheduled you will be sent for the referral & a return visit to Dr. Smith with results." (Compl. Ex L. at 36.)

**November 12, 2004:** Plaintiff appealed his grievance for second level review. (Compl. Ex L. at 36.)

**December 14, 2004:** Defendant Ritter issued a memorandum at the second level of appeal. Defendant Ritter stated in pertinent part "The inmate/patient was seen for follow-up care on November 22, 2004, by Dr. Smith was prescribed medication.  In addition, the results of the MRI that was taken on October 29, 2004, are available and attached to this appeal response." Additionally, the memorandum states "The appellant is advised that this issue may be submitted for a Director's Level of Review if desired." (Compl. Ex.O at 55.)

**December 16, 2004:** Defendant Ritter's second level of review memorandum is forwarded to Plaintiff. (Compl. Ex. L at 37.)

**January 6, 2005:** Plaintiff submits his request for a Director's Level Review. (Compl Ex L. at 37.)

**January 24, 2005:** Defendant Grannis receives Plaintiff's request for a Director's Level Review.

**March 28, 2005:** Defendant Grannis returns Plaintiff's third level appeal on the ground that it was not filed within fifteen working days of Plaintiff's receipt of his lower level decision. Plaintiff is specifically informed "Your assigned counselor, the Appeals Coordinator, or your Parole Agent can answer any questions you may have regarding the appeals process.  Library staff can help you obtain any addresses you need." (Compl. Ex. P. at 56.)

Here, applying the Court's analysis of § 3084.6, *supra*, the Court finds Defendants have not carried their burden of proving non-exhaustion. The declaration of T. Emigh is not persuasive. Plaintiff's grievance was timely filed.  Only thirteen working days expired between December 16, 2004 (the date the Second Level decision was returned to Plaintiff) and January 6, 2005 (the date Plaintiff asserts he submitted his request for a Director's Level Review).  Thus, Plaintiff's claims arising from grievance RJD:04-1615 are exhausted.

Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's unexhausted

---

[3] The staff signature is illegible.

1  claims, arising from grievance **RJD 04-979**, be **GRANTED**.  It is further recommended that

2  Defendant's motion to dismiss Plaintiff's exhausted claims arising from grievance **RJD:04-1615** be

3  **DENIED.**

4

5      **D.  Fourteenth Amendment Claim**

6        **1.  Due Process**

7          **a.  Procedural Due Process**

8      To plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or

9  property interest exists and has been subject to interference by the state; and (2) the procedures

10 attendant upon the deprivation of an existing interest were constitutionally insufficient. *Kentucky*

11 *Dept. Of Corrections v. Thompson*, 490 U.S. 454, 460 (1990).

12     Section 1983 is not itself a source of substantive rights, but merely provides a method for

13 vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

14 The requirements of procedural due process apply only to the deprivation of interests encompassed

15 by the Fourteenth Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408

16 U.S. 564, 569 (1972).

17     In addition to liberty interests that arise directly from the Constitution, however, courts have

18 long recognized that state prison regulations may give rise to liberty interests protected by the

19 Fourteenth Amendment.  *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976).  Nonetheless, the

20 interest created by the regulation must be something more than freedom from the restrictions

21 ordinarily contemplated by a prison sentence.  *Sandin v. Conner*, 115 S. Ct. 2293 (1995).  The

22 interests created by state prison regulations are "generally limited to freedom from restraint which,

23 while not exceeding the sentence in such an unexpected manner as to give rise to protection by the

24 Due Process Clause of its own force, nonetheless impose atypical and significant hardship on the

25 inmate in relation to the ordinary incidents of prison life." *Id*. at 2300 (citations omitted).

26     **b. Substantive Due Process**

27     To plead a substantive due process violation, a plaintiff must allege governmental action

28 which deprives plaintiff of a life, liberty or property interest which may not be deprived regardless

- 13 -

1    of the procedure employed. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S.

2    833, 846-50 (1992); *Daniels v. Williams*, 474 U.S. 327, 331 (1986). State action that "do[es] more

3    than offend some fastidious squeamishness or private sentimentalism, "but rather, 'shocks the

4    conscience' to the point that it 'is bound to offend even hardened sensibilities'" can be said to

5    violate due process. *Rochin v. California*, 342 U.S. 165, 172 (1952).

6        Under this standard, substantive due process violations have been limited to a small number

7    of issues. *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). In *Collins v. Harker Heights*, 503 U.S.

8    115 (1992), the Supreme Court noted that "as a general matter, the Court has always been reluctant

9    to expand the concept of substantive due process because the guideposts for responsible decision

10   making in this unchartered area are scarce and open-ended." *Id.* at 124. Accordingly, the

11   protections of substantive due process have for the most part been accorded to matters relating to

12   marriage, family, procreation, and the right to bodily integrity.

13       In his complaint, Plaintiff asserts a claim for relief "under the Eighth Amendment ... [cruel

14   and unusual punishment], the Fourteenth Amendment ... [improper conditions of confinement in

15   violation of substantive and procedural due process of law]." (Compl. at 49.) Plaintiff then goes

16   on to reiterate his contention that Defendants were deliberately indifferent to his injury, pain and

17   suffering. (Compl. at 50.) Indeed, the gravamen of Plaintiff's complaint is the lack of response by

18   Defendants in ensuring that Plaintiff received prompt and thorough medical care for the injury he

19   suffered.

20       Nowhere does Plaintiff identify how his procedural or substantive 14th Amendment due

21   process rights are implicated. Although "certain wrongs affect more than a single right, and

22   accordingly, can implicate more than one of the Constitution's commands," *Armendariz v. Penman*,

23   75 F.3d 1311, 1320 (9th Cir. 1996), the Supreme Court has held that where a claim can be analyzed

24   under "an explicit textual source" of rights in the Constitution, a court may not also assess the claim

25   under another "more generalized source." *Graham v. Connor*, 490 U.S. 386 , 394-95 (1989). In this

26   case, the Eighth Amendment provides specific limits on the type of government conduct

27   complained of by Plaintiff. Therefore, Plaintiff's claim should be analyzed under the Eighth

28   Amendment and not under the Fourteenth Amendment's due process provisions.

1    Accordingly, it is recommended that Defendants' motion to dismiss Plaintiff's request for

2 relief pursuant to the Fourteenth Amendment be **GRANTED**.

3    **E. Eighth Amendment Claim**

4    The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton

5 infliction of pain" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S.

6 153, 173, 173 (1976)).  This principle "established the government's obligation to provide medical

7 care for those whom it is punishing by incarceration." Id.  The Supreme Court has noted that "[a]n

8 inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so,

9 those needs will not be met." *Id.*; *West v. Atkins*, 487 U.S. 42, 54-55 (1988).

10    Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and

11 unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs.

12 *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hunt v. Dental Dept*, 865 F.2d 198, 200 (9th Cir. 1989).

13 "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury state

14 a cause of action under § 1983."  *Estelle*, 429 U.S. at 105.  "This is true whether the indifference is

15 manifested by prison doctors in their response to the prisoner's needs, or by prison guards in

16 intentionally denying or delaying access to medical care or intentionally interfering with the

17 treatment once prescribed." *Id.* at 104-05 (footnotes omitted).

18    A "serious" medical need exists if the failure to treat a prisoner's condition could result in

19 further significant injury or the "unnecessary and wanton infliction of pain." *Id.* at 104. Thus, the

20 "existence of an injury that a reasonable doctor or patient would find important and worthy of

21 comment or treatment; the presence of a medical condition that significantly affects the individual's

22 daily activities; or the existence of chronic and substantial pain are examples of indications that a

23 prisoner has a "serious" need for medical treatment."  *McGuckin v. Smith*, 974 F2d 1050, 1059-60

24 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F3d 1133 (9th Cir.

25 1997)(*en banc*); *Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000); *see also Doty v. County of

26 Lassen*, 37 F3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor

27 would think worthy of comment, those which significantly affect the person's daily activities, and

28 those which are chronic and accompanied by substantial pain).

1    In order to show deliberate indifference, "an inmate must allege sufficient facts to indicate

2 that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302

3 (1991).  The indifference must be substantial; inadequate treatment due to malpractice, or even

4 gross negligence does not amount to a constitutional violation.  *Estelle,* 429 U.S. at 106; *Toguchi v.*

5 *Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard.")

6 (citing *Hallett v. Morgan*, 296 F.3d 732, 1204 (9th Cir. 2002); *Wood v. Housewright*, 900 F.2d 1332,

7 1334 (9th Cir. 1990)).

8    The court must focus on the seriousness of the prisoner's medical needs and the nature of

9 the defendants' response to those needs.  *See McGuckin v. Smith*, 974 F.2d at 1059.  Differences in

10 judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis

11 and treatment are not enough to establish a deliberate indifference claim.  *Sanchez v. Vild*, 891 F.2d

12 240, 242 (9th Cir. 1989).

13    A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless

14 the delay or denial was harmful.  *See McGuckin v. Smith,* 974 F.2d at 1060; *Shapley v. Nevada Bd.*

15 *Of State Prison Comm'rs,* 766 F2d 404, 407 (9th Cir. 1985); *Hunt v. Dental Dept*, 865 F.2d at 200

16 ('[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute and

17 Eighth Amendment violation."); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)

18 ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable.")

19 While the harm caused by delay need  not necessarily be "substantial," *McGuckin v. Smith,* 974

20 F.2d at 1060 & n. 2; *see also Wood v. Housewright*, 900 F.2d at 1336, 1339-40 (9th Cir. 1990)

21 (Reinhardt, J. dissenting), the Eighth Amendment is violated if "delays occurred to patients with

22 problems so severe that delays would cause significant harm and that Defendants should have

23 known this to be the case," *Hallett v. Morgan*, 287 F.3d at 1206, and "a finding that the inmate was

24 seriously harmed by the defendants's action or inaction tend to provide additional support to a

25 claim that the defendant was 'deliberately indifferent' to the prisoner's medical needs." *McGuckin*

26 *v. Smith*, 974 F.2d at 1060.

27    Regarding inaction or delay of treatment, 'the fact that an individual sat idly by as another

28 human being was seriously injured despite the defendant's ability to prevent the injury is a strong

1    indicium of callousness and deliberate indifference to the prisoner's suffering." *Id.* (citing *Estelle*,

2    429 U.S. at 106).  However, a finding that the defendants' neglect of a prisoner's condition was an

3    "isolated occurrence," *Wood*, 900 F2d at 1334, or an "isolated exception", *Toussanit v. McCarthy,*

4    801 F2d 1080,1111 (9th Cir. 1986), to the defendants' overall course of treatment of the prisoner

5    ordinarily militates against a finding of deliberate indifference. *McGuckin*, 974 F.2d at 1060.

6    Further, prison officials who "ignore the instructions of a prisoner's treating physician are sufficient

7    to state a claim for deliberate indifference." *Wakefield*, 177 F.3d at 1165; *Estelle*, 429 U.S. at 105;

8    *Hamilton v. Endell*, 981 F2d 1062, 1066-67 (9th Cir. 1992).

9           In this case, Plaintiff argues that the healing fracture of Plaintiff's left anterior rib and old

10   fracture of Plaintiff's fifth right lateral rib are directly attributable to being intentionally caught

11   between the cell door and door frame. (Compl. at 9-10.)  Plaintiff further contends that he requested

12   and was denied medical treatment for the injury to his rib cage and upper torso after  the cell door

13   incident. (Compl. at 8-9.)  Specifically, Plaintiff states that he made a request for medical treatment

14   to Defendants Hurm, Williams, Jones, Ramirez, Reed, Comaucho, and Spence, all of whom refused

15   to give him a referral to the medical unit.  (Compl. at 7-9.)  The allegations against each of these

16   named defendants is as follows:

17          **Defendant Hurm**: on February 7, 2004, "who was present and eyewitnessed (sic) Plaintiff

18   being crushed by the door, refused to summon medical attention or write a pass for medical

19   attention."  (Compl.  at 7.)

20          **Defendant Williams**: On February 7, 2004, Plaintiff told Defendant Williams about his

21   injuries "MTA Williams told Plaintiff 'to leave and do not interupted (sic) his pill line."  (Compl. at

22   7.)

23          **Defendants Jones and Ramirez**: On February 7, 2004, these defendants "overheard

24   Plaintiff and MTA Williams conversation.  They told Plaintiff to leave or he'll be going to the hole.

25   Plaintiff returned to Housing Unit 13 without any medical attention... ."  (Compl.  at 7.)

26          **Defendant Spence**: On February 9, 2004, Plaintiff reported to Sgt.  Spence the whole

27   incident of what had occurred the prior evening.  Sgt. Spence told Plaintiff, "there is nothing he

28   could do and that he would have to wait to go to sick call Monday through Friday."  (Compl. at 8.)

1    **Defendant Reed:** On February 9, 2004, "Plaintiff explained to MTA Reed, about the

2 incident and complained he was having a hard time breathing because of his injuries, which had

3 prevented him from going to sleep due to the constant pain, and he needed to see the doctor.  MTA

4 Reed stated there was no doctor scheduled on the yard and refused to write a pass for Plaintiff to be

5 examined by the Central Infirmary physician(s)."  (Comp. at 8.)

6    **Defendant Camaucho:** On February 10, 2004, Plaintiff explained and repeated once more

7 the events that caused his injuries, and his current constant paint to another MTA, (MTA

8 Comaucho).  MTA Comaucho refused to write a pass for Plaintiff to be examined by the Central

9 Infirmary physicians. ... MTA Camaucho scheduled an appointment for 2-13-04, three days later to

10 see the Facility III Yard physician.  (Compl. at 8.)

11    **Dr. Jenkin:** On February 13, 2004, several days after incurring his injuries, Plaintiff was

12 examined by Dr.  Jenkin.  According to Plaintiff, "Dr. Jenkin refused and failed to examine

13 Plaintiff's body, asking only 'where does it hurt?'  Finally, Dr. Jenkin reluctantly wrote a pass for

14 an x-ray of Plaintiff's left side, ribs only.  Dr. Jenkin refused to prescribe any pain medication until

15 the x-rays verified any injury."  (Compl. at 9 and Ex. B at 2.)  "Dr.  Jenkin refused to and failed to

16 give Plaintiff a medical follow-up to inform Plaintiff that his left rib was fractured."  (Compl.  at 9.)

17 Dr. Jenkin ignored "Plaintiff's complaints of severe pain in his right ribs and collar bone, and

18 requesting a MRI waist up to neck...." (Compl at 10.)

19    On May 5, 2004, "three months after the incident, Dr.  Jenkin ordered X-rays of Plaintiff's

20 right ribs, left shoulder and cervical spine."

21    On June 14, 2004, Plaintiff was still in constant pain.  "Dr. Choo was successful in getting

22 him examined by a different physician."

23    Accepting all material factual allegations in Plaintiff's complaint as true, dismissal is not

24 proper here. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A claim may be

25 dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of

26 his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

27 Applying the standard set out in *Conley, Id.*, Plaintiff has sufficiently alleged defendants Hurm,

28 Williams, Jones, Ramirez, Reed, Comaucho, and Spence, denied him access to medical care and

- 18 -

1   treatment.  Additionally,  at this point in the proceedings, Plaintiff's claim against Dr.  Jenkin

2   sufficiently alleges he was denied adequate medical care and treatment rising to the level of

3   deliberate indifference in violation of the Eighth Amendment.  For these reasons, it is

4   recommended that Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim be

5   **DENIED**.

6           *F.  Monell* **Claim**

7           Defendants' contend that Plaintiff has asserted a claim against Defendants Hernandez,

8   Contreras, Dresbach, Oliveros, Lozano and Cavendar for their "actual or constructive knowledge of

9   deficient policies, practices, and customs resulting in the violation of Plaintiff's Constitutional

10  rights." " Defendants move to dismiss Plaintiff's claims against Defendants because "[t]o state a

11  claim based upon a specific policy or practice, the Plaintiff must establish a direct causal link

12  between the policy and Plaintiff's alleged constitutional deprivation." (MTD at 20).   Defendants

13  appear to rely upon the concepts addressed in the Supreme Court case of *Monell v. Dep't of Social*

14  *Servs*., 436 U.S. 658 (1978).  A claim based upon *Monell*, is a way of holding a municipality liable

15  for a subordinate's acts.

16          In *Monell v. Department of Social Servs*. *Id.*, the Supreme Court held that municipalities

17  were 'persons' under § 1983 and thus could be held liable for causing a constitutional deprivation.

18  *Id*. at 690.  The Court explained that while a municipality may not be held liable under § 1983 for

19  the torts of its employees on a theory of *respondeat superior*, "liability may attach where the

20  municipality itself causes the constitutional violation through the execution of an official policy,

21  practice or custom." *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) (internal citations

22  omitted).

23           " A policy is a 'deliberate choice to follow a course of action... made from among various

24  alternatives by the official or officials responsible for establishing final policy with respect to the

25  subject matter in question.'" *Id.* at 918. (internal citations omitted).  "Moreover, a local

26  governmental body may be liable if it has a policy of inaction and such inaction amounts to a

27  failure to protect constitutional rights." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470,

28  1474 (9th Cir. 1992).  '[I]t is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' *Monell*, 436 U.S. at 694. Moreover, 'it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)."[4] Defendants assert that Plaintiff has alleged the following policies "were affirmatively linked to, and the moving force behind, the injuries and other damages sustained by the Plaintiff herein." (MTD at 20).

**(a) Hiring and/or failing properly to assign, supervise, and control correctional officers known or who reasonably should have known to have used unnecessary, excessive, or unreasonable force in the past;**

**(b) Failing properly to discipline correctional officers who had engaged in the use of unnecessary violence, excessive, or unreasonable force;**

**(c) Failing to conduct adequate investigations of reported correctional officer misconduct and to maintain an organized and effective system for reporting and investigating incidents of alleged correctional officer brutality and abuse;**

**(d) Discouraging the public from reporting correctional officer's misconduct and otherwise acting to conceal or cover-up correctional culpability;**

**(e) Fostering a code of silence among the ranks of the CDCR to such extent that correctional officer misconduct was not reported by other officers.**

Considering all the applicable evidence presented, Plaintiff may have succeeded in alleging

---

[4] "[A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that governments' authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469 at 481.

a claim sufficient to survive Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, reviewing these "policies" within the context of the Complaint, it is clear that they relate to Plaintiff's claims against Defendant Martinez and the cell door incident as presented in grievance **RJD 04-979**.  As noted previously, this Court recommended Plaintiff's claims presented in his 602 grievance **RJD 04-979** be dismissed for failure to properly exhaust administrative procedures. Therefore, since Plaintiff is barred from moving forward with his unexhausted claims against Defendant Martinez, it is recommended that Defendants' Motion to Dismiss on this ground be **GRANTED**.

### G. Conspiracy Claim

#### 1. 42 U.S.C. § 1983

To allege a claim of conspiracy under §1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of conspiracy insufficient to support a claim under section 1983 or 1985).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim."  *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

Here, Plaintiff has failed to do anything more than provide broad, generalized allegations of "code of silence/aiding and abetting in the attempted cover up of defendants correctional officer's malicious and sadistic act to cause harm to Plaintiff." (Compl. at 51.)  However, Plaintiff fails to set forth any concrete or specific facts, overt acts or omissions attributable to any individual Defendant which demonstrate the existence of such conspiracies.  *Woodrum*, 866 F.2d at 1126; *Aldabe*, 616 F.2d at 1092.  Such "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Jones v. Community*

1  *Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by

2  facts are insufficient to state a claim under section 1983).

3       Accordingly, it is recommended that Defendants' Motion to Dismiss Plaintiff's 42 U.S.C.  §

4  1983 conspiracy claims be **GRANTED**.

5       **2. 42 U.S.C. § 1985(3)**

6       To the extent the conspiracy claims set forth in Plaintiff's Complaint are also alleged to

7  arise under 42 U.S.C. § 1985(3), they fail to state a claim upon which relief can be granted.  Section

8  1985(3) "is not to be construed as a general federal tort law."  *Gerritssen v. Madrid Hurtado*, 819

9  F.2d 1511, 1518-19 (9th Cir. 1987).  To state a cause of action under 42 U.S.C. § 1985(3), Plaintiff's

10  Complaint must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons the equal

11  protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the

12  conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a

13  deprivation of any right or privilege of a citizen of the United States."  *Gillespie v Civilett*, 629 F.2d

14  637, 641 (9th Cir. 1980); *see also, Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Sever v.*

15  *Alaska Pulp Corp*., 978 F.2d 1529, 1536 (9th Cir. 1992).  "[T]he language requiring intent to

16  deprive equal protection . . . means that there must be some racial, or perhaps otherwise class-

17  based, invidiously discriminatory animus behind the conspirators' action."  *Griffin*, 403 U.S. at 102;

18  *see also Sever*, 978 F.2d at 1536; *Orin v Barclay*, 272 F.3d 1207, 1217 & n.4 (9th Cir. 2001) (noting

19  that § 1985(3) extends beyond race only if "there has been a governmental determination that [the

20  class] members require and warrant special federal assistance in protection of their civil rights"),

21  *cert denied*, 122 S.Ct. 2661 (U.S. June 28, 2002) (No. 01-1440).  More specifically, in order to

22  extend § 1985(3) beyond race, the Ninth Circuit requires that "courts have designated the class in

23  question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress

24  has indicated through legislation that the class required special protection."  *Schulz*, 759 F.2d at

25  718; *Sever*, 978 F.2d at 1536.

26       Here, Plaintiff claims all Defendants conspired to deny him medical treatment.  However,

27  his Complaint contains no reference to race or other invidious form of discrimination and the Court

28  may not look outside the pleadings in order to determine whether Plaintiff has alleged facts

1   sufficient to show the racially discriminatory animus required to state a § 1985(3) claim pursuant to

2   Fed.R.Civ.P 12(b)(6).

3        Thus, without more, the Court finds that Plaintiff's Complaint fails to state a conspiracy

4   claim under §1985(3) and it is recommended that Defendants' Motion to Dismiss also be

5   **GRANTED** on this basis.

6        **H.  State Negligence Claims**

7        Defendants move to dismiss Plaintiff's state negligence claims on the ground that Plaintiff

8   failed to file his claims within the six month statute of limitations period as required pursuant to

9   Cal. Govt. Code § 945.6(c).

10       In response, Plaintiff relies on Cal. Govt. Code § 912.4 (If the [Victim Compensation and

11  Government Claims Board] ("Board") fails or refuses to act on a claim within the time prescribed

12  by this section, the claim shall be deemed to have been rejected by the Board on the last day of the

13  period within which the board was required to act upon the claim) and Cal. Govt. Code §

14  945.6(a)(2) (If written notice is not given in accordance with Section 913, any suit must be

15  commenced within two years from the accrual of the cause of action.)   Here, Plaintiff argues the

16  Board did not act upon his claim within the time prescribed in § 912.4.  According to Plaintiff the

17  Board had  forty-five days after the date Plaintiff filed his claim on August 6, 2004, to act on his

18  claim. Plaintiff argues that once the Board failed to send him written notice within the prescribed

19  forty-five days, Plaintiff's time for filing a cause of action automatically extended from six months

20  to two years as noted in § 945.6(a)(2). Thus, Plaintiff contends his state law claims are timely

21  because his statute of limitations was extended to two years due to the Victim Compensation and

22  Government Claims Board failure to act on the claim within forty-five days of receiving the claim.

23       After reviewing the relevant code sections, the Court finds Plaintiff's reliance on  §§ 912.4

24  and 945.6(a)(2) misplaced.  According to Plaintiff he submitted his claim on August 6, 2004.

25  Seventeen days later, in a letter dated August 23, 2004, Plaintiff was advised by the Board his claim

26  would not be processed until Plaintiff provided a copy of the Chief of Inmate Appeal Written

27  Decision. Specifically, the Board stated:

28            **Per Title 15, Division 3, Chapter 1, Article 8, Section 3084.1 of the
              California Code of Regulations, you are required to exhaust your**

**administrative remedies through the Department of Corrections (CDC).  Upon completion of the 602 appeal process, please provide a copy of the Chief of Inmate Appeal Written Decision in this matter.  This will serve as the CDC recommendation on your claim.  The Board will then complete the processing of your claim.**
**(Ex. U at 66.)**

Thereafter, on August 29, 2005, Plaintiff received another letter from the Board stating in pertinent part:

**Based on its review of your claim and the recommendations provided by the involved State agencies, Victim Compensation and Government Claims Board (Board) staff recommends your claim be rejected for the following reason(s):**
**It appears that the Directors Level Decision will not be obtained through the exhaustion of your administrative remedies.  Therefore, the Board's rejection preserves your right to sue the state should you choose to pursue this matter in a court of law.**
**The Board's policy for claims such as yours is to accept the staff recommendation without hearing claimant appeals.  The Board will act on your claim at the October 20, 2005 hearing.  We will notify you by mail of the Board's action on your claim shortly after the hearing.  The Board's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.**
**(Ex. U at 65.)**

Finally, on October 27, 2005, Plaintiff received notice that his claim was rejected at that October 20, 2005, hearing. (Ex. U at 64.)  According to the Board's warning presented in the October 27, 2005, letter, Plaintiff's six month statute of limitations began to run from the date of the letter as indicated therein.

Reviewing the language in the letters received by Plaintiff from the Board, it is clear Plaintiff's claim was not considered  ready for review until a final decision on his 602 administrative appeal had been forwarded to the Board.  Indeed, it appears his claim was "stayed" by the Board until Plaintiff received a final disposition of his inmate appeal which occurred on May 22, 2005.  Once the Board received notice of the final disposition of Plaintiff's inmate appeal, the Board began processing Plaintiff's claim as indicated in the Board's August 29, 2005, letter to Plaintiff.

As noted above, Plaintiff's claim was acted upon within 45 days of the filing of his claim on August 6, 2004 (i.e. as evidenced by the letter sent to Plaintiff on August 23, 2004).  By operation of law, processing of Plaintiff's claim was delayed until August 29, 2005.  *See* Title 15, Division 3, Chapter 1, Article 8, Section 3084.1.  Plaintiff received notice of rejection on October 27, 2005,

1  beginning the six month statute of limitations.  Plaintiff's six month statute of limitations expired

2  April 27, 2006.  Plaintiff filed his suit on August 4, 2006, over three months after the expiration of

3  the statute of limitations.  Thus, Plaintiff failed to timely file his state court action.[5]  Accordingly, it

4  is recommended that  Respondents' Motion to Dismiss Plaintiff's state law claims be **GRANTED**.

5       **I.  Plaintiff's Motion for Summary Judgment**

6       On or about May 9, 2007, Plaintiff filed a Motion for Summary Judgment FRCVP 56

7  ("MSJ").  In his Motion, Plaintiff requests summary judgment for nineteen defendants on the

8  ground that they were served on March 19, 2007, but failed to answer within twenty days.

9  Specifically, Plaintiff states "[a]s of this date, May 3, 2007, no answer has been filed by the

10 defendants named herein." (P's MSJ at 1.)  Therefore, upon review of Plaintiff's motion and based

11 upon the relief he seeks, the Court  will construe the motion for summary judgment as a motion for

12 default.

13       Plaintiff argues that Defendants failed to file a responsive pleading within twenty days of

14 service.  However, a review of the computer docket in this case shows that on March 19, 2007, all

15 defendants named in Plaintiff's instant motion filed a waiver of service thereby extending the time

16 for filing a responsive pleading to May 18, 2007.  Accordingly, since Plaintiff filed his Motion for

17 Summary Judgment before the deadline expired for Defendants to file a responsive pleading, it is

18 recommended that Plaintiff's motion be **DENIED**.

19       **V.  CONCLUSION**

20       For the reasons set forth herein, it is recommended:

21       1.  Defendants' Motion to Dismiss Plaintiff's claims against all Defendants sued in their

22 official capacity be **GRANTED;**

23       2.  Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief be **GRANTED;**

24       3**.** Defendants' Motion to Dismiss Plaintiff's Complaint for failure to exhaust administrative

25

26       [5] Assuming, for the sake of argument, Plaintiff is correct in his assertion his statute of limitations was
extended to two years, Plaintiff's state court action was *still* not timely filed.  As noted above § 945.6(a)(2)
provides that in the absence of a written notice a cause of action must be commenced "within two years from

27 the accrual of the cause of action." § 945.6(a)(2)**.**  Under this scenario, Plaintiff's cause of action accrued on
February 7, 2004.  Therefore, Plaintiff had until February 7, 2006, to file his cause of action if he was relying

28 upon § 945.6(a)(2)**.**  Since Plaintiff commenced his state cause of action on August 4, 2006, he was outside the
applicable statute of limitations.

remedies be **GRANTED** in part and **DENIED** in part;

    4. Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim be **GRANTED**;

    5. Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claim on *Respondeat Superior* grounds be **GRANTED**;

    6. Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claim be **DENIED**;

    7. Defendants' Motion to Dismiss Plaintiff's *Monell* claim be **GRANTED**;

    8. Defendants' Motion to Dismiss Plaintiff's conspiracy claims be **GRANTED**;

    9. Defendants' Motion to Dismiss Plaintiff's state law claims be **GRANTED**; and

    10. Plaintiff's Motion for Summary Judgment be **DENIED**.

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636 (b)(1) (1988).  Any party may file written objections with the court and serve a copy on all parties by ***February 25 , 2008***.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by ***March 7, 2008***.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2008

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court