1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11

FRANCISCO URIARTE,

                            Plaintiff,

     vs.

ARNOLD SCHWARZENEGGER, et. al.,

                        Defendants.

CASE NO. 06-CV-1558 W (WMC)

**ORDER ADOPTING REPORT AND RECOMMENDATION (Doc. Nos. 43, 47, 57)**

16
17

      On August 2, 2006 Plaintiff Francisco Uriarte ("Plaintiff"), a state prisoner proceeding *pro se*, commenced this action alleging various constitutional, common law, and 42 U.S.C. § 1983 claims.  (Doc. No. 1.)  On February 4, 2008 Magistrate Judge William McCurine, Jr. issued a Report and Recommendation ("Report") recommending that Defendant Arnold Schwarzenegger et. al.'s (collectively, "Defendants") motion to dismiss the complaint be granted in part and denied in part, and that Petitioner's motion for "summary judgment" be denied.  (Doc. No. 57.)  Both Plaintiff and Defendants submitted timely objections and replies.  (Doc. Nos. 59, 60.)  The Court decides the matter on the papers submitted and without oral argument.  See S.D. Cal. Civ. R. 7.1(d.1).  For the following reasons, the Court **ADOPTS** the Report, **OVERRULES** the parties' objections,  **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to dismiss, and **DENIES** Plaintiff's motion for summary judgment.  (Doc. Nos.

1   43, 47, 57).

2

3   I.   **BACKGROUND**

4        Plaintiff Francisco Uriarte is a state prisoner currently incarcerated at Ironwood

5   State Prison in Blythe, California.  (*Report* 1.)  Defendants are a collection of people

6   who are responsible or work for the California prison system.  The following description

7   of events is taken from the parties' pleadings and is not to be construed as findings of

8   fact by the Court.

9        On February 7, 2004 Plaintiff alleges that Defendant Martinez ("Martinez") was

10  working the prison's Building 13 tower panel, which controlled access into and out of

11  prisoner cells.  (*Id.* 2.)  Plaintiff asserts that while he exited the open threshold of his

12  cell, Martinez suddenly closed the sliding door, crushing Plaintiff between the cell door

13  and the door jamb.  (*Id.*)  Although Plaintiff's cell-mate yelled at Martinez to open the

14  door, Plaintiff contends that Martinez waited until he released all other inmates before

15  doing so.  (*Id.*)  When Martinez finally released the door, Plaintiff alleges that Martinez

16  "suddenly re-slammed the door against Plaintiff's body for a second time." (*Id.*)  Plaintiff

17  believes that he was seriously injured as the result of the cell door twice closing on him,

18  and asserts that Martinez and Defendant Hurm refused him medical attention.  (*Id.*)

19       From February 7 to February 13, 2004 Plaintiff alleges that he requested medical

20  attention from Defendant Williams, Defendant Jones, Defendant Ramirez, Defendant

21  Spence, Defendant Reed and Defendant Comaucho, whom all refused.  (*Id.*)  On or

22  about February 13, 2004 Dr. Jenkins examined Plaintiff and ordered an X-Ray of

23  Plaintiff's left side.  (*Id.* 2–3.)  On February 17, 2004 Plaintiff's X-Ray showed a healing

24  fracture on Plaintiff's left ninth anterior rib.  (*Id.* 3.)  Plaintiff alleges that he was not

25  informed of the X-Ray results or given proper medical attention.  (*Id.*)

26       On May 5, 2004 Dr. Jenkins ordered additional X-Rays.  (*Id.*)  On June 14, 2004

27  Plaintiff asserts that Dr. Choo, a different doctor, took another X-Ray which confirmed

28  Dr. Jenkins' diagnosis.  (*Report* 3.)  Plaintiff contends that both Dr. Jenkins and Dr.

1    Choo diagnosed injury to his ribs.  (*Id.*)

2         On August 2, 2006 Plaintiff filed this action alleging, among other claims, federal

3    and state civil rights violations.  (Doc. No. 1.)  On July 11, 2007 Defendants moved to

4    dismiss the complaint.  (Doc. No. 47.)   On September 4, 2007 Plaintiff opposed, and

5    on October 1, 2007 Defendants filed a reply.  (Doc. Nos. 51, 53.)  On February 4, 2008

6    the Magistrate Judge filed his Report, recommending that Defendants' motion to dismiss

7    be granted in part and denied in part.   (Doc. No. 57.)   On February 25, 2008

8    Defendants filed their objections to the Report.  (Doc. No. 59.)  On February 28, 2008

9    Plaintiff followed suit.  (Doc. No. 60.)  Both parties also submitted timely replies.  (Doc.

10   Nos. 61, 63.)

11

12   **II.    LEGAL STANDARD**

13        The Court must dismiss a cause of action for failure to state a claim upon which

14   relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under  Rule

15   12(b)(6) tests the complaint's sufficiency.  See North Star Int'l. v. Arizona Corp.

16   Comm'n., 720 F.2d 578, 581 (9th Cir. 1983).  All material allegations in the complaint,

17   "even if doubtful in fact," are assumed to be true.  Id.  The court must assume the truth

18   of all factual allegations and must "construe them in the light most favorable to the

19   nonmoving party."  Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also

20   Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

21        As the Supreme Court recently explained, "While a complaint attacked by a Rule

22   12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

23   obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

24   and conclusions, and a formulaic recitation of the elements of a cause of action will not

25   do."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007).  Instead, the

26   allegations in the complaint "must be enough to raise a right to relief above the

27   speculative level."  Id. at 1964–65.  A complaint may be dismissed as a matter of law

28   either for lack of a cognizable legal theory or for insufficient facts under a cognizable

1  theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

2      Where a plaintiff appears *in propria persona* in a civil rights case, the court must

3  also be careful to construe the pleadings liberally and afford plaintiff any benefit of the

4  doubt.  See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.

5  1988).  However, at a minimum, even a *pro se* plaintiff must allege with at least some

6  degree of particularity over acts which defendants engaged in that support his claim.

7  Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

8

9  **III.    DISCUSSION**

10      Having read and considered the underlying Complaint, Motion to Dismiss,

11  Report and Objections thereto, the Court concludes that the Report presents a well-

12  reasoned analysis of the issues raised in the Complaint and Motion to Dismiss.  For the

13  following reasons, the Court finds that the Report correctly concluded that Defendants'

14  motion should be granted in part and denied in part.

15

16      **A.    Plaintiff Does Not Object to the Report's First, Second, Fourth,**

17           **Eighth, Ninth and Tenth Conclusions Against Him**

18      The Magistrate Judge's Report recommends, among other things, that: (1)

19  Defendants' motion to dismiss Plaintiff's claims against all defendants sued in their

20  official capacity be granted; (2) Defendants' motion to dismiss Plaintiff's claim for

21  injunctive relief be granted; (4) Defendants' motion to dismiss Plaintiff's Fourteenth

22  Amendment claim be granted; (8) Defendants' motion to dismiss Plaintiff's conspiracy

23  claim be granted; (9) Defendants' motion to dismiss Plaintiff's state law claims be

24  granted; and (10) Plaintiff's motion for summary judgment be denied.  (*Report* 25–26.)

25  Plaintiff does not object to these conclusions and specifically concedes these issues.

26  (*Pls.' Objections* 2.)

27      A district court's duties concerning a magistrate judge's report and

28  recommendation and a respondent's objections thereto are set forth in Rule 72(b) of the

Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  When no objections are filed, the district court is not required to review the magistrate judge's report and recommendation.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (holding that 28 U.S.C. 636(b)(1)(c) "makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made,* but not otherwise") (emphasis in original); Schmidt v. Johnstone, 263 F. Supp. 2d 1219, 1226 (D. Arizona 2003) (concluding that where no objections were filed, the District Court had no obligation to review the magistrate judge's Report).  This rule of law is well established within the Ninth Circuit and this district.  See Wang v. Masaitis, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, de novo review of a R & R is **only** required when an objection is made to the R & R.") (emphasis added) (citing Renya-Tapia, 328 F.3d 1121).

Because neither Plaintiff nor Defendant object to the Report's first, second, fourth, eighth, ninth, and tenth conclusions, the Court **ADOPTS** the Report's recommendations on those issues in their entirety, **GRANTS** Defendants' motion to dismiss those particular claims and **DENIES** Plaintiff's motion for summary judgment, and **DISMISSES** the relevant claims **WITHOUT PREJUDICE**.

## B.    Plaintiff's Pursuit of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies before bringing this action.  (*Report* 6.)  Plaintiff contends that any delay in pursuing administrative relief is due solely to Defendants' obfuscation.  (*Report* 8.)  The Report reviewed Plaintiff's two administrative grievances and found that while his first grievance's appeals were unexhausted, the claims arising from his second grievance were properly before this Court.  (*Report* 11, 12–13.)  Plaintiff objects to the Report's conclusion, arguing that he was unable to meet his first grievance's deadlines because Defendants delayed his mail.  (*Pl.'s Objections* 5–7.)  Defendants also object, contending that Plaintiff still has additional administrative remedies with which to exhaust his

06cv1558W

1    second grievance, and that Plaintiff's second grievance is unexhausted against certain

2    defendants included in his claims.  (*Defs.' Objections* 4–5.)

3         The Ninth Circuit has held that failure to exhaust non-judicial remedies is a

4    matter of abatement not going to the merits of the case and is properly raised pursuant

5    to a motion to dismiss.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837

6    F.2d 365, 368–69 (9th Cir. 1988).  In deciding a motion to dismiss for failure to exhaust

7    non-judicial remedies, the court may look beyond the pleadings and decide disputed

8    issues of fact.  Id. at 369.

9         The Prison Litigation and Reform Act ("PLRA") amended 42 U.S.C. § 1997e to

10   provide that "no action shall be brought with respect to prison conditions under [42

11   U.S.C. § 1983], or any other federal law, by a prisoner confined in any jail, prison or

12   other correctional facility until such administrative remedies as are available are

13   exhausted.  42 U.S.C. § 1997e(a)  Exhaustion is required prior to the filing of any

14   prisoner lawsuit concerning prison life, whether the claims involve general conditions

15   or specific incidents and whether they allege excessive force or some other wrong.

16   Porter v. Nussle, 534 U.S. 516, 532 (2002).  "Even when the prisoner seeks relief not

17   available in grievance proceedings, notably money damages, exhaustion is a pre-requisite

18   to suit."  Id. at 524.

19        The State of California provides its prisoners and parolees the right to

20   administratively appeal any departmental decision, action, condition or policy perceived

21   by those individuals as adversely affecting their welfare.  Cal. Code Regs. tit. 15,

22   § 3084.1(a).  Exhausting the administrative appeals process involves several steps: (1)

23   informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3)

24   "second level appeal" to the institution head or designee, and finally (4) "third level

25   appeal" to the Director of the California Department of Corrections.  Barry v. Ratelle,

26   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).

27   The third level, or "Director's Level," of review shall be final and exhausts all

28   administrative remedies available in the Department of Corrections.  Cal. Dep't of

1  Corrections Operations Manual § 54100.11, "Levels of Review"; Barry, 985 F. Supp. at

2  1237–38; Irvin v. Zamora, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001).

3

4            ***i.***      ***Plaintiff's First Grievance: RJD-04-979***

5        Defendants argue that Plaintiff's first grievance—complaining about Martinez's

6  actions—was not appealed in a timely fashion. Specifically, Defendants argue that

7  Plaintiff received his response to his second level appeal on December 29, 2004 and did

8  not file a third level appeal until February 15, 2005. (*Mot. to Dismiss* 10–12.) The

9  Report agrees with Defendants, concluding that Plaintiff failed to exhaust the

10  administrative process because he waited over fifteen days to pursue a third level appeal

11  after receiving the second level response. (*Report* 9–12.) Plaintiff objects, arguing that

12  he actually received his second level response on January 28, 2005, and had fifteen days

13  until that date to pursue a third level appeal. (*Pl.'s Objections* 6–8.)

14        Under California Code of Regulations title 15, section 3084.6(c) an appellant

15  must file his appeal within fifteen working days of the decision being appealed or of

16  receiving an unacceptable lower level appeal decision. Because the regulation is not

17  clear on the issue of when the moment of filing has occurred, the Court looks at the

18  interpretation of similar regulations. See Houston v. Lack, 487 U.S. 266 (1988). In

19  Houston, the Supreme Court held that a prisoner acting *pro se* will be found to have

20  "filed" their notice of appeal the moment the notice is handed over to prison authorities

21  for mailing. Id. at 270–72.

22        In this case, the timeliness issue turns on when Plaintiff actually received the

23  results of his second level review, when Plaintiff actually submitted his appeal for third

24  level review, and whether the two dates were within fifteen working days of each other.

25  Establishing the dates Plaintiff received and submitted his appeals is difficult—Plaintiff

26  contends that the prison delayed delivering his mail, Defendants' policies and mail logs

27  assume (but do not prove) prison guards promptly deliver and pick-up inmate mail, and

28  each party has an incentive to allege the other's idleness.

While Plaintiff submits a crude affidavit allegedly proving receipt of his second level results on January 28, 2005, Defendants point to Section G on Form 602 showing receipt on December 29, 2004. (Compare *Compl.* Ex. K at 34 with *Def.'s Mot. to Dismiss* 11.) And while Plaintiff points to Section H on Form 602 showing that he submitted his appeal for third level review on February 15, 2005, Defendants argue that the Inmate Appeals Board received Plaintiff's submission on February 22, 2005. (Compare *Compl.* Ex. K at 26 with *Def.'s Mot. to Dismiss* 11, *T. Emigh Decl.* ¶ 8.)

Because both parties had access to Form 602 and could amend or correct any incorrect dates thereon, for the sake of consistency the Court will use Section G and Section H on Form 602 in determining whether Plaintiff timely submitted his appeal for third level review. The additional affidavits and declarations both parties provide are simply not credible or rely on questionable assumptions.[1] Here, Section G shows that Plaintiff received the results of his second level appeal on December 29, 2004. Section H, signed by Plaintiff, is dated "February 15, 2005" as the date Plaintiff submitted his appeal for third level review. Because Section H shows submission for third level review well past fifteen working days from receipt of his second level results, Plaintiff has not properly exhausted the administrative review process for his first appeal. See Woodford v. Ngo, 548 U.S. 81 (2006) (holding that the exhaustion requirement cannot be met by filing an untimely or otherwise defective administrative grievance or appeal).

Accordingly, the Court **ADOPTS** the Report, **OVERRULES** Plaintiff's objections, **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's claims arising

---

[1]For instance, Plaintiff submits a purported affidavit from "C/O G. Snyder" which allegedly proves that Plaintiff received the results from his second level appeal on January 28, 2005, and not December 29, 2004 as listed on Form 602. (*Compl.* Ex. K at 34.) Attempting to prove the affidavit as genuine, Plaintiff urges the court to "compare signatures" with an unrelated piece of correspondence also purportedly signed by Snyder. (*Pls.' Objections* Ex. B.) Although Plaintiff is a prisoner proceeding *pro se* and deserves every benefit of the doubt, the Court cannot find "Snyder's" informal, misspelled, and unsworn affidavit credible evidence and worthy of serious consideration.

06cv1558W

1  from grievance RJD-04-979.[2]  In overruling Plaintiff's objections, the Court also adopts

2  the Report's related fifth and seventh conclusions, that Defendants' motion to dismiss

3  Plaintiff's Eighth Amendment claim on *Respondeat Superior* grounds and Defendants'

4  motion to dismiss Plaintiff's <u>Monell</u> claim be **GRANTED**.[3]

5

6              ii.     *Plaintiff's Second Grievance: RJD-04-1615*

7          Although Defendants's motion does not specifically address Plaintiff's second

8  grievance, the record indicates Plaintiff submitted another grievance alleging lack of

9  proper medical care after Martinez's actions.  (*Compl.* Ex. L.)   Like Plaintiff's first

10  grievance, the second grievance was rejected at third level review on the ground that

11  it was not filed within fifteen working days of Plaintiff's receipt of his second level

12  response.  (*Id.* Ex. P.)

13          The   Report   found   that   the   California   Department   of   Corrections   and

14  Rehabilitation ("CDCR") improperly rejected Plaintiff's third level appeal on timeliness

15  grounds, and concluded that Plaintiff had exhausted his administrative remedies for

16  claims   arising   from   the   events   undergirding   his   second   grievance.   (*Report* 11–13.)

17  Defendants object, and while they apparently concede that CDCR improperly rejected

18  Plaintiff's appeal, they argue that additional administrative remedies existed to challenge

19  Plaintiff's administrative denial.  (*Defs.' Objections* 3.)   Furthermore, Defendants argue,

20  the claims stemming from Plaintiff's second grievance improperly include claims against

21  six Defendants who did not appear in the administrative appeals process.  (*Id.* 4–5.)

22          As mentioned above the Supreme Court has held that a prisoner acting *pro se* will

23

24          [2]Plaintiff also urges the Court to follow Fifth, Sixth, Seventh, Eighth, and Tenth Circuit
     precedent holding that the exhaustion requirement is satisfied where prison officials fail to
25   timely respond to an inmate's written grievance.  (*Pls.' Objections* 9.)   However, Plaintiff's
     authority does not control where an inmate's submission is not initially timely.
26

27          [3]Plaintiff only objected to the Report's fifth and seventh conclusions to the extent they
     depended on an unexhausted administrative appeal for RJD-04-979.  (*Pl.'s Objections* 9–10.)
28   Because the Court has adopted the Report's recommendation that RJD-04-979 is unexhausted,
     the Court further adopts the Report's reasoning for granting Defendant's motion to dismiss
     Plaintiff's <u>Monell</u> claim and Eighth Amendment claim on *Respondeat Superior* grounds.

1  be found to have "filed" their notice of appeal the moment the notice is handed over to

2  prison authorities for mailing. Houston, 487 U.S. at 270–72. In this case, Section G on

3  Form 602 indicates that Plaintiff received his second level results on December 16,

4  2004. (*Compl.* Ex. L 37.) Section H indicates that Plaintiff submitted his third level

5  appeal on January 6, 2005—thirteen working days later. (*Id.*) Although Defendant

6  Grannis rejected Plaintiff's third level appeal as untimely under section 3804.6(c),

7  (*Compl.* Ex. P), the Court finds this rejection erroneous because Plaintiff submitted his

8  appeal for third level review within fifteen working days. Thus, Plaintiff has exhausted

9  the administrative process for his second grievance.[4]

10       Although Defendants concede that Grannis improperly screened out Plaintiff's

11  complaint, they argue that Plaintiff could have, and should have, pursued other

12  administrative remedies in addition to the adminstrative procession laid out in Barry,

13  985 F. Supp. at 1237. (*Defs.' Objections* 3.) The law does not require as much. Because

14  Plaintiff has attempted to appeal the prison officials' inaction regarding his treatment

15  to every level of the prison grievance system, Plaintiff has not failed to exhaust his

16  administrative remedies. See Barry, 985 F. Supp. at 1237. Defendants have provided

17  no authority to suggest Plaintiff *must* re-submit his appeal, pursue informal relief, or file

18  an extraordinary writ to perfect this Court's jurisdiction.

19       Defendants second objection concerns Plaintiff's Eighth Amendment claims

20  against Defendants Hurm, Jones, Ramirez, Reed, Spence and Williams. (*Defs.' Objection*

21  4.) Because, Defendants contend, Plaintiff submitted his second grievance against Drs.

22  Jenkins and Ritter only, Plaintiff has failed to exhaust his Eighth Amendment claims

23  against the six Defendants mentioned above. (*Id.*)

24  _____

25      [4]Defendants' Reply also introduces—for the first time—the prison's mail log and policies for sending and delivering inmate mail. (*Defs.' Reply* 4–5.) According to Defendants' mail log,

26  Plaintiff either placed his appeal in the drop box *or handed it to a correctional officer* no earlier than January 19, 2005. (*J. McNeil Decl.* ¶ 9 (emphasis added).) The Court finds Defendants'

27  self-serving arguments and declarations unconvincing in light of Plaintiff's insistent contention that prison staff was regularly delaying the delivery and submission of his mail. For the sake

28  of consistency, and for the same reasons mentioned in the Court's analysis of Plaintiff's first grievance, the Court will continue to calculate Plaintiff's reception and submission dates by Sections G and H on Form 602.

The Court finds Defendants' arguments unconvincing. Although Plaintiff specifically complains of Drs. Jenkin's and Ritter's diagnosis and care, Plaintiff's grievance also generally alleges wholesale dissatisfaction with the prison's response to his medical requests. (*Compl.* Ex. L. 38.) In doing so, Plaintiff's grievance alleges that each of the six Defendants performed an act or omission which delayed his receiving medical attention. (*Id.*) The Court refuses to so narrowly read Plaintiff's second grievance as to preclude Eighth Amendment claims against the six Defendants on administrative exhaustion grounds. Simply, Plaintiff's second grievance gave Defendants enough information to be put on notice and an opportunity to take corrective action; this fulfills the purpose of the administrative process. Accordingly, the Court **DENIES** Defendants' motion to dismiss for failure to exhaust administrative remedies for claims arising out of the second grievance. Because Defendants only object to the Eighth Amendment claims against the six Defendants on exhaustion grounds, the Court **ADOPTS** the Report, **OVERRULES** Defendants' objections, and **DENIES** Defendant's motion to dismiss Plaintiff's Eighth Amendment claim arising out of the second grievance.

## IV.   CONCLUSION

For the above reasons, and the reasons expressed in the Report and herein incorporated by reference, the Court finds that the Report presents a well-reasoned analysis of the relevant issues. Accordingly, the Court **ADOPTS** the Report in its entirety, **OVERRULES** Plaintiff's and Defendants' objections, and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (Doc. Nos. 43, 47, 57.) Specifically:

1.   The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims against all Defendants sued in their official capacity.

2.   The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief.

3.  The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion to Dismiss Plaintiff's Complaint for failure to exhaust administrative remedies.

4.  The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim.

5.  The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Claim on *Respondeat Superior* grounds.

6.  The Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim.

7.  The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's <u>Monell</u> claim.

8.  The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's conspiracy claims.

9.  The Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's state law claims.

10. The Court **DENIES** Plaintiff's Motion for Summary Judgment.  (Doc. No. 43.)


**IT IS SO ORDERED**.


DATED:  March 13, 2008

_____
Hon. Thomas J. Whelan
United States District Judge

06cv1558W